IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMERGENCY CARE RESEARCH | : | CIVIL ACTION |
| INSTITUTE | : | |
| | : | |
| v. | : | |
| | : | |
| GUIDANT CORPORATION, et al. | : | NO. 06-1898 |

MEMORANDUM

Bartle, C.J.                                     September 12, 2007

        Plaintiff Emergency Care Research Institute ("ECRI"), a
non-profit health services research agency, instituted this
diversity action against defendants Guidant Corporation, Guidant
Sales Corporation ("GSC"), and Cardiac Pacemakers, Inc. ("CPI")
(collectively, "Guidant").   ECRI seeks a declaratory judgment
that it may continue to acquire and publish certain information
it receives from hospitals regarding the prices they pay for
medical devices made and sold by Guidant.   ECRI also seeks a
declaration that it has not tortiously interfered with any of
Guidant's sales contracts with hospitals and other health care
providers.

        In its answer to ECRI's complaint, Guidant raises two
counterclaims.   It first asserts that ECRI has tortiously
interfered with the contracts between Guidant and its customers.
Guidant also claims under the Pennsylvania Uniform Trade Secrets
Act ("PUTSA"), 12 Pa. Cons. Stat. Ann. § 5301, et seq., that ECRI

has misappropriated its trade secrets by obtaining the
confidential prices Guidant charges said hospitals.

        Now before the court are:  (1) the motion of ECRI for
summary judgment on its declaratory judgment claims and on
Guidant's counterclaims for tortious interference with contracts
and misappropriation of trade secrets; and (2) the motion of
Guidant for partial summary judgment on Guidant's counterclaim
for tortious interference with contracts.

                                I.

        Summary judgment is appropriate only where there is no
genuine issue of material fact and the moving party is entitled
to judgment as a matter of law.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c).  A dispute is
genuine if the evidence is such that a reasonable jury could
return a verdict for the non-moving party.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 254 (1986).  After reviewing the
evidence, the court makes all reasonable inferences from the
evidence in the light most favorable to the non-movant.  In re
Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

                                II.

        For the purpose of reviewing ECRI's motion for summary
judgment, the following facts are either undisputed or viewed in
the light most favorable to the Guidant, the non-movant.

        Guidant manufactures cardiac rhythm management devices
("CRMs"), including pacemakers and defibrillators, that it sells
in Pennsylvania and throughout the United States.  Guidant

                               -2-

negotiates individualized sales contracts with each of its hospital and healthcare customers, such that different customers pay different prices for the same CRM.  Guidant uses a "strategic pricing system" to analyze a variety of factors in determining the price at which the company will sell a particular CRM to a particular customer.

Since 1996, ECRI has provided a service called "PriceGuide," which consists of a searchable database of the average and lowest prices paid for a wide range of different medical products throughout the country.  Approximately 400 different hospitals, health systems, manufacturers, and government agencies, among others, subscribe to PriceGuide. These subscribers pay for the right to search the database for information about what prices are being charged to other purchasers of the same and competing items.

ECRI maintains its database by encouraging PriceGuide subscribers to submit their own pricing information.  Such submissions are not contractually required, and ECRI provides no discounts or compensation in return for such submissions.  About half of PriceGuide's subscribers generally choose to submit their individual data.  Guidant customers are among those who have furnished ECRI with specific purchase price information, and ECRI has included this information in the PriceGuide database.  The availability on PriceGuide of this price information is at the center of the dispute between the parties.

-3-

Guidant regards both its pricing analysis and individual contract prices as trade secrets and maintains that nearly all Guidant sales contracts include a confidentiality provision prohibiting its CRM customers from disclosing the terms of their respective contracts.  When receiving submission data from PriceGuide subscribers, ECRI does not review the subscribers' contracts with vendors such as Guidant.

Guidant first learned about ECRI's publication of Guidant contract prices in PriceGuide in May 2004.  Guidant promptly sent a cease-and-desist letter to ECRI.  Guidant represented that all its price information was subject to confidentiality agreements between Guidant and its customers.  In response, ECRI (1) removed certain "sample" Guidant pricing information from the publicly available section of its website; (2) added statements to its subscriber contracts and to every page of the PriceGuide database directing PriceGuide subscribers "not to provide ECRI with any data or information . . . that is protected under a confidentiality agreement with a third party"; and (3) added a notice to the same effect on every report downloaded from PriceGuide.

Guidant nonetheless takes the position that any PriceGuide subscriber who submitted Guidant prices would have to be doing so in violation of a confidentiality agreement.  It requested that ECRI cease and desist from receiving or using *all* data on Guidant CRM prices.  Guidant has produced in discovery

all contractual documents relating to purchases made by those
hospitals that have submitted pricing information to PriceGuide.

In response, ECRI removed from its database any Guidant
prices coming from hospitals for which ECRI's independent counsel
determined that enforceable confidentiality clauses existed.
ECRI contends, however, that many of Guidant's putative contracts
are unenforceable due to expiration or lack of signature, and
that Guidant lacks confidentiality agreements with certain group
purchasing organizations that would account for a large number of
hospital purchases.  Guidant, in response, concedes that a very
small number of contracts did in fact lack confidentiality
agreements but asserts that the existing contracts are standard
as a matter of industry practice and are enforceable.

III.

First, ECRI asserts that the court should grant summary
judgment in its favor on Guidant's counterclaim for tortious
interference with contracts.  Pennsylvania has adopted the
Restatement (Second) of Torts § 766, which provides that "[o]ne
who intentionally and improperly interferes with the performance
of a contract (except a contract to marry) between another and a
third person by inducing or otherwise causing the third person
not to perform the contract, is subject to liability to the other
for the pecuniary loss resulting to the other from the third
person's failure to perform the contract."  See Adler, Barish,

-5-

Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978) (quoting Restatement (Second) of Torts § 766 (1979)).

In order to succeed on a claim of tortious interference with an existing contractual relation under the above standard, a plaintiff must prove the following elements:  (1) the existence of a contract between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) actual damage as a result of the defendant's conduct.  Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) (citing Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. 1997).  Notably, the second element can also be found where "the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) Torts § 766 cmt. j (1979).

Several elements of the claim are contested in this case.  For example, as to the second element, requiring intent to harm the existing relationship, ECRI maintains that it could not be "certain or substantially certain" that interference would occur, because (1) ECRI posted notices throughout the PriceGuide submission process indicating that no PriceGuide subscriber should submit prices in breach of a confidentiality agreement, and (2) despite Guidant's blanket assertions, Guidant has failed to prove that all or even most Guidant contracts contain

-6-

enforceable confidentiality provisions.  In contrast, Guidant
argues that (1) ECRI was put on notice of the confidentiality
clauses both by Guidant's representations and by actual contract
documents provided in discovery, and (2) ECRI therefore knew that
any receipt of Guidant pricing information from PriceGuide
subscribers was "certain or substantially certain" to result in
interference with Guidant's confidentiality clauses.  This issue
of ECRI's knowledge and intent cannot be resolved based on the
current record.

Likewise, the parties dispute whether ECRI's conduct
was "proper."  To establish a claim for tortious interference, a
plaintiff must prove the absence of privilege or justification
for defendant's interference.  Specifically, Pennsylvania courts
have adopted the Restatement (Second) of Torts § 767, which
states that courts should consider: "(1) the nature of the
actor's conduct; (2) the actor's motive; (3) the interests of the
other with which the actor's conduct interferes; (4) the
interests sought to be advanced by the actor; (5) the social
interests in protecting the freedom of action of the actor and
the contractual interests of the other; (6) the proximity or
remoteness of the actor's conduct to the interference; and (7)
the relations between the parties."  Windsor Secs., Inc. v.
Hartford Life Ins. Co., 986 F.2d 655, 663 (3d Cir. 1993) (quoting
Restatement (Second) of Torts § 767 (1979)); Adler, 393 A.2d at
1184.

Whether a party's behavior was improper such that it constituted tortious interference requires inquiry into the "mental and moral character of the defendant's conduct." Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159 (3d Cir. 1988) (quoting 2 Harper, James, and Gray, The Law of Torts § 6.12, at 349 (2d ed. 1986). Phrased differently, a defendant's actions should be considered proper if they constitute "'socially acceptable conduct' that comports with the 'rules of the game which society has adopted.'" Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1381 (3d Cir. 1992) (quoting Adler, 393 A.2d at 1184). The Pennsylvania Supreme Court has explained that "[t]he absence of privilege or justification in [tortious interference] is closely related to the element of intent. . . . What is or is not privileged conduct in a given situation is not susceptible of precise definition." Adler, 393 A.2d at 1183-84.

ECRI asserts that its conduct is privileged or justified both by a public policy encouraging competition and price transparency in the healthcare industry, where costs are continually escalating, and by the fact that ECRI does not require or otherwise contract for the submission of Guidant's pricing information. Guidant, in contrast, argues that ECRI's conduct is improper because ECRI purposefully and directly induces Guidant customers to violate their confidentiality agreements with Guidant and generates substantial revenue from

that practice.[1]  Because of this unique factual background and a
seeming lack of consensus as to the social "rules of the game" in
the "benchmarking" industry (as ECRI's field is known), this
element of the tort of tortious interference cannot be decided on
summary judgment.

A genuine issue of material fact also exists as to how
many of Guidant's contracts contain confidentiality agreements.
According to Guidant, less than two percent lack such provisions,
whereas ECRI argues that many of Guidant's contracts produced in
discovery have either expired or are unenforceable for lack of
the purchaser's signature.  The lack of clarity in the current
record on these points compels us to deny ECRI's motion for
summary judgment on both its own declaratory judgment claims and
on Guidant's counterclaim for tortious interference with
contracts.

Likewise, Guidant's own motion for partial summary
judgment on its counterclaim for tortious interference with
contracts must be denied.  Particularly when viewing the facts in
the light most favorable to ECRI, unresolved factual issues
abound as to the existence of confidentiality agreements, ECRI's

---

1.  To be sure, the propriety of ECRI's conduct is further
complicated by questions of what ECRI knew or should have known
regarding Guidant's confidentiality clauses, and of ECRI's
ability to discover such information even if it desired to do so.
The first, second, and third elements of the Adler test are thus
unusually intertwined in this particular case.  The peculiar
relationship between ECRI, Guidant, and Guidant's customers may
also raise later issues regarding damages and the fourth Adler
element.

knowledge of such agreements, and the propriety of ECRI's conduct.

This case is easily distinguished from the recent summary judgment ruling in a related action cited by both parties. See Cardiac Pacemakers, Inc. v. Aspen II Holding Co., Inc., 413 F. Supp. 2d 1016 (D. Minn. 2006). In that case, Guidant sued Aspen, a for-profit consulting company. Aspen's business model was to charge hospitals for assistance in their price negotiations with vendors. The hospital-clients provided Aspen with a record of their current and expired purchasing contracts, and in return received a price negotiation strategy based on the data from both that particular hospital and each of Aspen's other former clients.[2] Aspen thereby acquired firsthand knowledge of certain Guidant contracts,[3] and during the litigation acknowledged that those particular contracts contained confidentiality provisions. Thus, whereas "Aspen [did] not dispute the existence of confidentiality agreements, nor its knowledge of the agreements," ECRI credibly disputes both. Id. at 1023. Moreover, ECRI was not a paid consultant who knowingly

---

2. Aspen provided only price negotiation strategies to hospitals, and did not reveal the "discrete price points" or average sale prices paid by its other hospital-clients. Thus, the Aspen case involved a different kind of underlying information from that at issue in the present case. 413 F. Supp. 2d at 1020.

3. The extent to which Aspen and this case involve any of the same contracts is uncertain. The Aspen court's determination as to the existence of confidentiality agreements is therefore unhelpful.

used Guidant's confidential price information to develop a
hospital's specific negotiating strategy in its dealings with
Guidant.

                               IV.

        ECRI also moves for summary judgment on Guidant's claim
of misappropriation of trade secrets under PUTSA.  "The question
of whether certain information constitutes a trade secret is a
question of fact to be resolved by the jury or the trier of
fact." Camelot Tech., Inc. v. RadioShack Corp., No. CIV.A.
01-CV-4719, 2003 WL 403125, at *5 (E.D. Pa. Feb. 13, 2003); see
also Emtec, Inc. v. Condor Tech. Solutions, Inc., No. CIV.A.
97-6652, 1998 WL 834097, at *8 (E.D. Pa. Nov. 30, 1998).  The
relevant factors under Pennsylvania law are "substantial secrecy
and competitive value to the owner." O.D. Anderson, Inc. v.
Cricks, 815 A.2d 1063, 1070 (Pa. Super. 2003) (quoting Den-Tal-
Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1228 (Pa.
Super. 1989)).  In making this determination, Pennsylvania courts
have considered several sub-factors:

> (1) the extent to which the information is known outside
> of the owner's business; (2) the extent to which it is
> known by employees and others involved in the owner's
> business; (3) the extent of measures taken by the owner
> to guard the secrecy of the information; [... (5)] the
> amount of effort or money expended by the owner in
> developing the information and (6) the ease or difficulty
> with which the information could be properly acquired or
> duplicated by others.

See Pestco, Inc. v. Associated Products, Inc., 880 A.2d 700, 706
(Pa. Super. 2005) (citing Prudential Ins. Co. of Am. v. Stella,
994 F. Supp. 318, 323 n. 2 (E.D. Pa. 1998)).

                              -11-

The factual record at this stage of the case is unclear as to: (1) the extent of confidentiality agreements; (2) the extent to which Guidant's prices are known in the healthcare industry; (3) the extent to which Guidant's prices are readily ascertainable through proper means; and (4) the competitive value of the prices to Guidant.  ECRI's motion for summary judgment on Guidant's misappropriation of trade secrets claim will be denied.

V.

Finally, ECRI asserts that the doctrine of unclean hands should bar Guidant from seeking relief on both its tortious interference with contracts claim and its misappropriation of trade secrets claim.  ECRI argues that Guidant improperly employed Millennium Research Group ("MRG"), a marketing research firm, to conduct studies of CRM pricing and utilization in hospitals across the country.  MRG paid hospital employees a monthly "honorarium" to report data on the hospitals' purchases of CRMs manufactured by Guidant and its competitors, but did not reveal that the research was conducted on Guidant's behalf.  MRG made no attempt to determine whether the information was protected by confidentiality agreements.

ECRI maintains that Guidant thereby knowingly induced hospitals to breach the very confidentiality agreements that are at issue in this litigation, as well as the confidentiality agreements of Guidant's competitors.  Guidant asserts that it used the information only to generate "high-level snapshots of relative market share and aggregate pricing trends," rather than

-12-

to make competitive pricing decisions, and that the conduct was therefore not improper.

The doctrine of unclean hands traditionally applies to prevent parties from seeking equitable remedies.  See, e.g., McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 756 n.9 (3d Cir. 1990).  Thus, it affects this case only insofar as Guidant has reserved its right to injunctive relief if the Court elects to provide such relief.  Even a successful unclean hands defense would not prevent ECRI from being found liable or accountable for damages.

The Third Circuit has recently held that the doctrine of unclean hands applies when one party "has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation."  Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001).  Guidant's employment of MRG to collect purchase data for the purpose of high-level trend tracking, although perhaps unseemly, is not so clearly "unconscionable" as to permit a judgment for ECRI as a matter of law.[4]  ECRI's motion for summary judgment on the defense of unclean hands will also be denied.

---

4.  Of course, these facts may bear on the question of whether Guidant's pricing information was "readily ascertainable" for the purposes of its status as a trade secret.

-13-

```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EMERGENCY CARE RESEARCH     :        CIVIL ACTION
INSTITUTE                   :
                            :
        v.                  :
                            :
GUIDANT CORPORATION, et al. :        NO. 06-1898
```

ORDER

AND NOW, this 12th day of September, 2007, for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

(1) the motion of Emergency Care Research Institute ("ECRI") for summary judgment on its claim for declaratory judgment and on the counterclaims of Guidant Corporation, Guidant Sales Corporation, and Cardiac Pacemakers, Inc. (collectively, "Guidant") is DENIED; and,

(2) the motion of Guidant Corporation, Guidant Sales Corporation, and Cardiac Pacemakers, Inc. (collectively, "Guidant") for partial summary judgment on the counterclaim of Guidant Corporation, Guidant Sales Corporation, and Cardiac Pacemakers, Inc. (collectively, "Guidant") for tortious interference with contracts is DENIED.

BY THE COURT:

/s/ Harvey Bartle III
                                        C.J.